GLENN AGRE BERGMAN & FUENTES LLP
LYN R. AGRE (CASBN 178218)
BURKE STRUNSKY (CASBN 203582)
580 California Street, Suite 1420
San Francisco, CA 94104
Telephone: (415) 599-0880
lagre@glennagre.com
bstrunsky@glennagre.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE DOE,<br><br>             Plaintiff,<br><br>      v.<br><br>STATE OF CALIFORNIA; CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; GREGORY RODRIGUEZ; JOEY SOLORIO; DOES 1-50 inclusive,<br><br>             Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff NICOLE DOE ("Plaintiff") alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.  Plaintiff presents federal claims for relief under 42 U.S.C. § 1983, and supplemental state law claims actionable under California Civil Code § 52.1. Plaintiff's claims arise from her having been repeatedly sexually assaulted by former CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") officers GREGORY RODRIGUEZ and JOEY SOLORIO and the concealing of those offenses that followed.

2.  For all state claims asserted in this Complaint, California Government Code § 945.9(a) exempts those claims from the California Tort Claim Act (Cal. Gov't Code § 910 et. seq.) and all other state and local government claim presentation requirements.

## JURISDICTION AND VENUE

3.  This Court has subject-matter jurisdiction over the claims arising under 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1343.

4.  This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Plaintiffs' state law claims are so related to Plaintiff's federal law claims that they form part of the same case or controversy.

5.  Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) because the underlying acts, omissions, injuries, and related facts giving rise to Plaintiff's claims occurred within this District.

6.  Intra-district venue is proper in the Fresno Division of the Eastern District of California pursuant to E.D. Cal. L.R. 120(d) because the claims asserted herein arise from acts or omissions which occurred in the County of Madera.

7.  The Court has personal jurisdiction over Defendants as all Defendants are domiciled or conduct substantial business in the State of California.

1

**COMPLAINT**
**NICOLE DOE**

**PARTIES**

8.      Plaintiff NICOLE DOE is an individual residing in Los Angeles County.  Plaintiff is identified by pseudonym to protect her from any stigma, emotional distress, and hardship that could result from publicly disclosing her identity.  A motion on behalf of Plaintiff for leave to proceed under pseudonym will be filing following the filing of this complaint.

9.      Defendant STATE OF CALIFORNIA at all times material herein employed the individual Defendants in this action and the claims against each of the individual Defendants arise from acts those Defendants committed within the course and scope of their employment. The STATE OF CLAIFORNIA is referred to as an "Entity Defendant" herein.

10.      The CALIFORNIA DEPARTMENT OF CORRECTS AND REHABILITATION is an agency of the State of California and is therefore separately subject to suit as a public entity. The CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION is referred to as an "Entity Defendant" herein.

11.      At all times relevant herein, OFFICER GREGORY RODRIGUEZ ("RODRIGUEZ") was, at all times material herein, a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. RODRIGUEZ is sued in his individual and as an agent purportedly acting under the authority and ratification of his principal, Defendants State of California and CDCR.

12.      At all times relevant herein, OFFICER JOEY SOLORIO was a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. SOLORIO is sued in his individual and as an agent purportedly acting under the authority and ratification of his principal, Defendants State of California and CDCR.

13.      DOES 1 through 50 inclusive, were duly authorized employees and agents of Defendants State of California, and the actions alleged herein were committed by Defendants, each of them, under color of law as agents purportedly acting under the authority and ratification of their principal, Defendants State of California and CDCR.

**COMPLAINT**
**NICOLE DOE**

14. Each defendant named herein was acting under color of state law when they committed each of the acts alleged herein.

15. In doing acts described herein, Defendants RODRIGUEZ, SOLORIO and DOES 1 through 50 inclusive, were acting on the implied or actual permission and consent of Defendants State of California and CDCR.

16. At all relevant times, Defendant State of California, and its agency, the CDCR, had the legal duty to oversee and supervise and review the hiring, confirm the fitness of, regularly review the performance of, investigate complaints involving, continued employment, training, and review conduct of individual defendants and DOES 1 through 50 inclusive.

17. The true names of Defendants DOES 1 through 50 inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants sued as DOES, when the true names and capacities have been discovered or ascertained.

18. At all relevant times, Defendants DOES 1 through 30, inclusive, were law enforcement officers employed by the CDCR who participated in the violation of Plaintiff's protected rights, or who materially assisted others in the violation of those rights, or who knowingly assisted others in the concealment of, and/or knowingly made false denials of the material facts of the violation of Plaintiff's protected rights.

19. At all relevant times, Defendants DOES 31 through 50, inclusive, were managers, supervisors, administrators, or service providers hired and supervised by the State of California or the CDCR.

### **TIMELINESS**

20. Section 340.16 of the California Code of Civil Procedure establishes the statutes of limitations for recovery of damages suffered as the result of the sexual assault of an adult. Section 340.16, subdivision (a), sets the statute of limitations for recovery of damages resulting from adult sexual abuse to the later of: (1) within 10 years of the last act or attempted act against the plaintiff

**3**

**COMPLAINT**
**NICOLE DOE**

or (2) within three years from when the plaintiff discovers or should have discovered an injury or illness resulted from a sexual assault or attempted sexual assault.

21.    Under section 340.16, subdivision (b), a "sexual assault" is limited to "any of the crimes described in California Penal Code sections 243.4 [Sexual Battery], 261 [Rape], 264.1 [Rape in Concert], 286 [Sodomy], 287 [Forcible Oral Copulation], or 289 [Sexual Penetration with a Foreign Object], assault with the intent to commit any of those crimes, or an attempt to commit any of those crimes.

22.    In October of 2021, the Governor of California signed Assembly Bill 1455, which enacted California Government Code section 945.9, which provide that "[a] claim arising out of an alleged sexual assault by a law enforcement officer if the alleged assault occurred while the officer was employed by a law enforcement agency is exempted from all state and local government claim presentation requirements." Section 959.9 further provides that "[n]otwithstanding any other law, the time for commencement of a claim seeking to recover damages arising out of an alleged sexual assault by a law enforcement officer, if the alleged sexual assault occurred on or after the plaintiff's 18th birthday and while the officer was employed by a law enforcement agency, shall be the later of either of the following dates. . . Within 10 years after the law enforcement officer is no longer employed by the law enforcement agency that employed the officer when the alleged sexual assault occurred.

23.    Officers RODRIGUEZ and SOLORIO assaulted Plaintiff while they were employed as a law enforcement officers for the CDCR. RODRIGUEZ was employed by CDCR until 2022.

24.    The assaults on Plaintiff began after 2009. Officer RODRIGUEZ did not stop assaulting or attempting to assault and Plaintiff, and CDCR staff did not stop aiding and abetting and conspiring with RODRIGUEZ to assault Plaintiff, until approximately early 2016, after

**COMPLAINT**
NICOLE DOE

Plaintiff was transferred to the California Institute for Women in Corona, California. The last physical assault on Plaintiff took place shortly before November 14, 2024. However, RODRIGUEZ continued to "call out" Plaintiff to isolated locations in CCWF until November 14, 2024, and attempted to see her in CCWF until she was transferred to the SHU on November 14. RODRIGUEZ also attempted to see Plaintiff at CIW in 2016. Plaintiff saw RODRIGUEZ at CIW and he attempted directed her to come to where he was standing but Plaintiff fled. Plaintiff also received notes from RODRIGUEZ, that were passed to her through other inmates, indicating RODRIGUEZ was at CIW and directing her to come to a certain location in the CIW facility, but Plaintiff did not go.

## FACTS

25. Plaintiff was committed to the CDCR (at the Valley State Prison Reception Center) in April of 2006, when she was 19 years old. Her offense of conviction was her first contact with law enforcement and her first arrest.

26. For the first 6 plus years of her imprisonment in CDCR, she was housed at Valley State Prison. In October of 2012, she was transferred to CCWF.

27. Her transfer to CCWF set in motion a series of events in which Plaintiff would be brutally victimized, sexually assaulted, harassed, intimidated and unconstitutionally punished with baseless incarceration in segregated housing units, and denied needed mental health care for years.

28. A 2016 report by the Prison Law Office, produced pursuant to a court order and based on more than 130 interviews of inmate housed at CCWF, described its findings as follows: "From the very top of its former management, CCWF has incubated an institutional culture that permits, condones, and covers up abuse; that allows staff to retaliate against prisoners seeking assistance; and that prevents prisoners from seeking help from entities outside the institution. This corrosive atmosphere of fear and violence stems from a widespread failure of staff to perform the most basic requirements of their jobs. Staff do not treat prisoners with basic dignity as fellow human beings; staff verbally, sexually, and physically abuse or harass prisoners; staff do not

**COMPLAINT**
**NICOLE DOE**

protect prisoners from violence by other prisoners and fail to report and prevent violence from occurring again; staff do not properly or completely investigate all allegations of mistreatment. Staff's failure to do their jobs has led to widespread and open use and distribution of drugs in the prison." Plaintiff fell victim to the wantonly unlawful culture of CCWF for years.

29.    The Prison Law Office report further indicated "[m]any of the same names of staff (and behaviors) detailed in our May 2016 report were repeated in the joint CDCR/PLO interviews. This is not a situation of 'a few bad apples' causing a problem, but rather pervasive indifference toward prisoners . . ." The report's "main systemic findings" included: (1) The then existing monitoring or accountability structures failed to identify or prevent abuse and retaliation. Several prisoners described the facility's Investigative Services Unit (ISU) investigations that were inadequate, or were closed after prisoners were pressured to recant allegations against staff; (2) Prisoners faced retaliation for using the appeals process to report a problem, to request assistance, or to ask for help or protection; (3) Custody staff commonly facilitated and instigated violence among prisoners; (4) Officers used excessive and/or unnecessary force on prisoners; (5) Officers physically and sexually abused, harassed, and threatened prisoners; (6) Custody staff perpetuate a culture of bigotry, sexual harassment and casual misogyny addressing women not by their names, but as "bitches," "hos," or "whores," or with racial epithets.

30.    Shortly after her arrival at CCWF, Plaintiff was approached by correctional officer GREGORY RODRIGUEZ. RODRIGUEZ began contacting Plaintiff in various areas of the prison with frequency and in locations that indicated he was seeking her out. When he saw Plaintiff, he would engage her in conversations, during which he would comment on her appearance, inform her that he was influential inside the prison, tell her that she should work in areas of the prison he supervised, and offer to provide her with benefits and gifts. Initially, RODRIGUEZ provided Plaintiff with money for her to send to her family and contraband cosmetics. Later, he would provide her with lingerie and alcohol in the form of plastic water bottles filled with vodka.

31.    During these early encounters, RODRIGUEZ also made clear to Plaintiff that if she did not give in to his demands, he would make life difficult for her in the prison, including potentially filing false misconduct reports about her or turning other inmates against her.

**COMPLAINT**
**NICOLE DOE**

32.     RODRIGUEZ's initial sexual assault on Plaintiff occurred in Spring of 2014. In a criminal complaint filed in the California Superior Court for Madera County (Case No. MCR077701), Plaintiff is the first identified victim of Office RODRIGUEZ. However, it is not known whether she was his first actual victim or simply the first-in-time victim for which Madera County prosecutors had evidence sufficient to support charges.

33.     In 2014, Plaintiff worked in the "A yard" intake programming office; she was housed in "C yard". C yard was directly in the center of the facility so the observation towers surrounding that area did not see into the C yard as they looked outward. At the time, RODRIGUEZ was working as an escort officer within the facility and worked numerous extra shifts in various positions, which allowed him to access all areas of the prison. Being an escort officer with seniority also meant that every 2 to 3 weeks, RODRIGUEZ would change the location in the prison where he was working. This also gave RODRIGUEZ access to the multiple areas within the facility. This ability to access Plaintiff almost anywhere in the prison allowed RODRIGUEZ to sexually assault Plaintiff on more than a dozen separate occasions while she was incarcerated at CCWF.

34.     To commit the assaults, RODRIGUEZ used multiple means of contacting Plaintiff, including calling her on the intra-prison phone system while she worked in her prison office job and directing her to leave her work assignment and meet him at a location in the facility. RODRIGUEZ also relayed messages to her through other correctional officers directing her where she needed to meet him and having her forge a "movement pass" so that she could go to the area where he wanted to meet. RODRIGUES also "called out" Plaintiff, through other CDCR staff, to have her come to retrieve non-existent "legal mail" (Plaintiff was not a party to any litigation in at any point in 2014 and was not represented by counsel at that time). RODRIGUEZ would also find her in the prison and direct her in person where to meet him later. Finally, RODRIGUEZ would have other correctional officers assign Plaintiff to work in areas where RODRIGUEZ was supervising. RODRIGUEZ would also notify Plaintiff of unlocked doors, which he had unlocked or had other correctional officers unlock, that would allow her to access areas they were supposed to meet.  RODRIGUEZ would then command her that when she walked in a group of inmates by

COMPLAINT
NICOLE DOE

that open access door, she was to slip away from the group and go into the adjacent room and wait for him to arrive.

35. During the assaults, RODRIGUEZ would usually provide incentives for Plaintiff to comply, sometimes in the form of gifts. Plaintiff was too fearful to refuse the "gifts" RODRIGUEZ gave her as he plainly told her that if she refused, her would make things "hard" for her in the prison.

36. Though Rodrigez did not directly threaten Plaintiff with physical harm, he did tell her that he had been working at the prison a long time and that he "knew a lot of people" in the prison who would do his bidding, which Plaintiff understood to mean both inmates and correctional officers. Plaintiff was aware both that RODRIGUEZ was able to enlist other guards to assist him in his assaults on her by passing messages and moving her to areas of the prison Rodrguez was supervising. Plaintiff was also aware that RODRIGUEZ was passing contraband to other inmates, including narcotics, and that if Plaintiff caused RODRIGUEZ to be removed from the prison, the inmates profiting from the contraband would be hostile to Plaintiff. RODRIGUEZ also intimidated Plaintiff by informing her he could place false misconduct reports ("115s") on inmates, an event that could cause a negative change in the inmate's housing assignment or lengthen their sentence by causing the inmate to lose "good time" credits.

37. RODRIGUEZ sexually assaulted Plaintiff in multiple locations in the prison. RODRIGUEZ assaulted and sexually abused Plaintiff in the work exchange area, in a janitor's closet, in a Medical Trailer, in a legal mail or "SAP Trailer", in "Office Services" classrooms, and in the "clinic" in the C-yard. Almost all of these assaults included sexual intercourse or oral copulation or both. One or two of the earliest assaults involved RODRIGUEZ pushing Plaintiff against a wall, forcefully kissing her and groping her breasts, then putting his hands into her pants and digitally penetrating her. Another involved RODRIGUEZ forcing her mouth onto his penis.

38. Other correctional officers at CCWF knew of RODRIGUEZ's assault on Plaintiff. Multiple officers witnessed Plaintiff walking to areas of the prison where she was not supposed to be, entering service trailers she had no business entering, and leaving her work assignment to meet RODRIGUEZ at other areas of the prison. Eventually, a correctional officer approached Plaintiff

**8**
**COMPLAINT**
**NICOLE DOE**

in the C Yard in about September of 2014 because she appeared distressed. The officer told Plaintiff to stop what she was doing with RODRIGUEZ. Plaintiff recalls the officer stating something to the effect of, "whatever they're doing to you, you need to stop." The officer did not offer to assist Plaintiff in any way. Plaintiff is not aware how the officer learned of the assaults but at the time, numerous inmates had already made comments to Plaintiff indicating they knew RODRIGUEZ was sexually assaulting her.

39.     Plaintiff is informed and believes, based on discovery in the Madera criminal case and other lawsuits, that in November of 2014, a different guard informed the CCWF administration and/or Investigative Services Unit ("ISU") that RODRIGUEZ had been sexually assaulting Plaintiff. Rather than investigating the allegation and RODRIGUEZ, the CCWF administration and ISU took intentional and malicious steps to punish and intimidate Plaintiff into remaining silent.

40.     On November 14, 2014, Plaintiff was taken from her cell by ISU officers and placed in a room in the "program office" of the prison. An officer named then stripped her naked in front of multiple guards, body cavity searched her, placed her in a thin "mumu" style medical gown and "flip flops", and took her to "work exchange", where she was evaluated by medical staff. She was then taken to "central control", where she was interrogated by ISU officers in a manner that was hostile and intimidating and clearly indicated to Plaintiff that the ISU officers believed Plaintiff was to blame for accepting gifts from and engaging in sexual acts with RODRIGUEZ. The interrogator's question also informed Plaintiff that the ISU was attempting to gather information from her about how many people knew of RODRIGUEZ's actions. As a result, Plaintiff denied that RODRIGUEZ had assaulted her. The interrogation was recorded by video camera.

41.     Following the interrogation, ISU officers marched Plaintiff through the prison yard, past numerous inmates, in the medical gown, flip flops and plainly visible handcuffs, to the Special Housing Unit ("SHU"). It was apparent to Plaintiff that the ISU officers' reason for escorting her through the yard in cuffs and irregular clothing was to inform the inmates present

**COMPLAINT**
**NICOLE DOE**

that Plaintiff was being investigated by ISU and potentially cooperating. She would spend the next six months in the SHU.

42.    Plaintiff's "C-file" confirms that she was interrogated by ISU on November 14, 2014, and was subsequently confined to the SHU, upon the Warden's personal approval of the transfer, due to Plaintiff having engaged in "overfamiliarity with staff".

43.    Forcing Plaintiff to walk through the yard in a robe and handcuffs further terrorized Plaintiff because Plaintiff was aware that RODRIGUEZ had been smuggling contraband into the prison and providing it to inmates who would sell the contraband to other inmates. Plaintiff was fearful that if she caused RODRIGUEZ to be removed from the prison, thereby disrupting certain inmates' flow of contraband and profits, those inmates would retaliate against her with violence.

44.    During her time at SHU, Plaintiff continued to be harassed by CCWF correctional officers. On numerous occasions, correctional officers made intimidating and harassing statements to her in the SHU.  On one occasion, Plaintiff was escorted by staff from the SHU to a medical evaluation when a male officer made a comment about being Plaintiff likely being pregnant, which caused a female officer who was also present to tell the male officer to "shut up", causing the male officer to laugh. On another occasion, an officer taunted her in the SHU by telling her segregation was what she "got for riding the pipe". In addition, RODRIGUEZ continued to attempt to assault Plaintiff in the SHU. Another correctional officer informed Plaintiff that while she was in SHU, Officer RODRIGUEZ had tried to visit her in the SHU on multiple occasions but was sent away by other officers.

45.    Plaintiff stayed in SHU for a total of 184 consecutive days until she transferred to the California Institute for Women on May 7, 2015. In the transfer section of Plaintiff's C-File it was noted that she was being transferred due to a pending investigation.

46.    Plaintiff's CDCR C-File also includes a copy of an "Informative Chrono", dated April 15, 2015, requesting that Plaintiff be transferred out of CCWF. The Chrono indicates the reason for the transfer is a "pending" Internal Affairs investigation (case number C-CCWF-692-14-A). The Chrono further indicates that the Office of Internal Affairs-Central Region has been

notified of and approved the transfer, and that copies of the Chrono were circulated to "CCI" (California Correctional Institute in Tehachapi, California), "ISU", and "E-file".

47. After Plaintiff was transferred to CIW, Officer RODRIGUEZ continued to harass and attempt to sexually assault her. Between May of 2015 and early 2016, RODRIGUEZ apparently took several inmate transport trips to CIW, during which RODRIGUEZ attempted to have contact with Plaintiff. On one occasion, Plaintiff saw RODRIGUEZ at CIW. RODRIGUEZ said hello to Plaintiff, but Plaintiff immediately walked away. On two or three other occasions, RODRIGUEZ sent messages to Plaintiff through other inmates telling Plaintiff he was at CIW, where he was located, and directing her to come to his location. Plaintiff did nothing in response.

48. Plaintiff also continued to be harassed by other inmates at CIW. Because numerous inmates who had been at CCWF in 2013 and 2014 were transferred to CIW, rumors about Plaintiff were widely spread through the inmate population at CIW. This included rumors that Plaintiff had cooperated in an ISU investigation at CCWF.

49. As a result of her victimization by officer RODRIGUEZ and harassment by CDCR staff and inmates, Plaintiff has suffered from major depressive disorder, anxiety disorder, post-traumatic stress disorder, and substance abuse disorder.

50. On November 18, 2014 (4 days after her transfer to SHU), Plaintiff was evaluated by "Psy Tech P. Williams". Williams indicated Plaintiff exhibited a possible mood disorder and presented as a suicide risk. He referred her for "further evaluation." However, on November 26, 2014, Plaintiff was evaluated in the SHU by "E. McKenzie, PhD." McEnzie found there was "no evidence of change in mental health needs". On December 9, 2014, Plaintiff was again interviewed in SHU by Mental Health Services. She was "tearful" but did not want to participate in counseling and stated that she feared accusing CCWF staff of misconduct. CCWF mental health services responded by "providing empathy and support/opportunity for catharsis re recent events/placement is ASU" and claimed, "no signs of mental illness were noted".

51. Because RODRIGUEZ was able to contact Plaintiff at CIW, the conduct of the CDCR staff, and the rumors that circulated among CIW inmates, Plaintiff remained in fear of RODRIGUEZ for years. She was too fearful to tell CDCR investigators about her victimization by

**11**

**COMPLAINT**
**NICOLE DOE**

RODRIGUEZ until she was contacted in 2022 by CDCR Internal Affairs investigators that she believed were sincerely interested in investigating and prosecuting RODRIGUEZ.

52. Following RODRIGUEZ's assaults on Plaintiff and the CDCR conspiracy to silence her and quash the investigation of RODRIGUEZ's crimes, RODRIGUEZ would go on to sexually harass and assault at least twenty additional CDCR inmates. The Madera County District Attorney has identified 22 victims (including Plaintiff), and it stands to reason that there are many more.

53. The fact that so many inmates were victimized after Plaintiff refused to cooperate with ISU investigators in 2014 has added to Plaintiff's remorse, anxiety and depression.

54. Officer RODRIGUEZ was not the only CCWF correctional officer who assaulted and raped Plaintiff. After RODRIGUEZ began assaulting Plaintiff but before she was transferred to the SHU, a CCWF correctional officer named JOEY SOLORIO violently raped Plaintiff on two occasions. On both occasions officer SOLORIO transported Plaintiff to an anteroom or storage room where there were no cameras, tore her clothing off, and forcibly raped her. Other CDCR staff, as well as surveillance cameras, observed SOLORIO pull Plaintiff from the presence of other inmates and transport her to the locations where he raped her.

55. Officer SOLORIO threatened Plaintiff with further physical harm and physical violence by other inmates if she revealed the assaults. Plaintiff was terrified of SOLORIO because he portrayed himself as a "thug" and often implied to CCWF inmates that he had gang connections in the prison and outside the prison.

56. Plaintiff is informed and believes SOLORIO was a CCWF ISU officer at or near the time when he raped Plaintiff, and therefore may have known about the ISU investigation of allegations against RODRIGUEZ. Plaintiff is unaware whether RORDRIGUEZ knew of SOLORIO's assaults on Plaintiff. However, SOLORIO must have been aware of RODRIGUEZ's assaults on Plaintiff as by the time SOLORIO assaulted Plaintiff, it was widely known among the staff and inmates at CCWF that RORDRIGUEZ had been serially sexually assaulting Plaintiff.

57. Over a period of nearly a decade, the CDCR administration, CCWF wardens, the CCWF ISU unit, and CCWF staff conspired to perpetuate a culture of lawlessness at CCWF under

which it was clear to inmates and staff that CCWF guards were free to sexually assault inmates and smuggle contraband into the prison without fear of punishment of any sort.

58.    At the time when the CCWF initiated its investigation of Plaintiff's "inappropriately familiar relationship" with RODRIGUEZ, CDCR policy required that the Warden of CCWF, or any other CDCR prison, be informed of the investigation of allegations that a correctional officer was engaging in sexual conduct with an inmate.

59.    California Code of Regulations, Title 15, Section 3401.5(c) requires any employee to immediately report "any incident, information or facts which would lead a reasonable person to believe sexual misconduct has occurred". Staff members who fail to report are themselves subject to disciplinary proceedings.

60.    In 2005, the State of California enacted Penal Code Section 2636, which requires that the CDCR "ensure that staff members intervene when an inmate or ward appears to be the target of sexual harassment or intimidation."

61.    In 2006, following Congress's adoption of federal standards in 2003, the State of California adopted a Prison Rape Elimination Act Policy ("PREA"), which provides that CDCR has "zero tolerance for sexual violence, staff sexual misconduct and sexual harassment in its institutions," and that all "sexual violence, staff sexual misconduct, and sexual harassment is strictly prohibited." (See Department of Corrections and Rehabilitation Operations Manual, Article 44, Section 54040.1, "Policy".) That section further states that the CDCR's policy of keeping inmates safe from "offender on offender sexual violence, staff sexual misconduct, and sexual harassment. . . will be accomplished by maintaining a program to address education/prevention, detection, response, investigation, and tracking of these behaviors. . ." Department Operations Manual, Chapter 5, Article 44, section 54040.4, further provides,  "All staff, including employees, volunteers, and contractors, shall receive instruction related to the prevention, detection, response, and investigation of offender sexual violence, staff sexual misconduct, and sexual harassment."

62.    According to a 2019 PREA audit commissioned by the State of California, in the years 2016, 2017 and 2018, CCWF received 161 reports of sexual assault or harassment in CCWF,

COMPLAINT
NICOLE DOE

yet only two allegations were "substantiated". The same audit found that in 2018, there were 17 reports of staff on inmate sexual assaults, but none were substantiated.

## FIRST CAUSE OF ACTION
### Violation of Civil Rights – 42 U.S.C. § 1983 – Failure to Intervene
### (Against Entity Defendants)

63.    Plaintiff repeats and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

64.    Defendants, while acting under color of law, deprived Plaintiff of her civil rights under the Eighth and Fourteenth Amendment to the United States Constitution when they acted with deliberate indifference and reckless disregard toward Plaintiff's right to be protected from cruel and unusual punishment and sexual assault and to be afforded due process of law, and made intentional decisions with respect to the conditions under which Plaintiff was confined and failed to intervene by, among other things, the following acts:

(a)    Failing to provide security procedures and/or personnel screening procedures sufficient to prevent sexual assaults by staff on inmates in CCWF:

(b)    Failing to provide proper oversight of CDCR's investigation of sexual assaults of inmates by staff in CCWF;

(c)    Failing to properly monitor or provide surveillance in the interior of the CCWF facility or otherwise failing to protect Plaintiff, or otherwise standing by and allowing the CCWF staff to sexually assault Plaintiff and other similarly situated inmates.

(d)    Failing to implement security measures sufficient to prevent staff at the CCWF from sexually assaulting inmates at CCWF, though the threat of such assaults and harassment was well known to the administration of the CCWF and the CDCR.

65.    Plaintiffs are informed and believed that Defendants were aware of how dangerous it was for inmates such as Plaintiff to be housed at the CCWF.  Defendants intentionally, recklessly, and with deliberate indifference, failed to take adequate security measures to protect

**COMPLAINT**
**NICOLE DOE**

vulnerable inmates and failed to employ proper security procedures and policies and ensure proper safety for the inmates at CCWF.

66.    The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among other various alternatives.

67.    As a direct result of Defendants' acts and omissions, Plaintiff has experienced severe pain and suffering, emotional distress, and is entitled to recover damages.

68.    Plaintiff brings this claim individually under the Eighth and Fourteenth Amendments, in that Defendants denied Plaintiff's constitutional rights without due process of law and inflicted cruel and unusual punishment on Plaintiff in a manner that was malicious, wanton and shock the conscience. Plaintiff seeks damages, including for pain and suffering, emotional distress, loss of enjoyment of life, and future economic damages. Plaintiffs also seek attorneys' fees.

## SECOND CAUSE OF ACTION

**Violation of Civil Rights – 42 U.S.C. § 1983 – Unconstitutional Custom, Practice or Policy**
**(Against Entity Defendants)**

69.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

70.    Plaintiff is informed and believes and thereon allege that at all times herein mentioned, Defendants, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and rights of Plaintiff, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following practices, policies and customs:

**COMPLAINT**
**NICOLE DOE**

(a)    Failing to ensure safety of inmates, especially those that might be vulnerable, particularly by failing to provide adequate inmate safety and security measures in CCWF;

(b)    Failing to maintain monitoring/surveillance of cells, dormitories, and dayrooms, in a manner capable of alerting personnel who could respond to sexual assaults by staff inside the Jail;

(c)    Failing to establish policies and procedures to reduce the risk of inmate injury by sexual assault inside CCWF facility; and

(d)    Failing to sufficiently investigate and/or supervise investigations of sexual assaults by staff occurring inside the CCWF.

(e)    Perpetuating a culture of that tolerated staff bigotry, sexual harassment and casual misogyny addressing women not by their names, but as "bitches," "hos," or "whores," or with racial epithets.

71.    By reason of the aforementioned policies and practices of Defendants, Plaintiff was damaged and experienced severe pain and suffering, emotional distress, loss of enjoyment of life, and loss of future earnings, for which she is entitled to recover damages.

72.    Defendants, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, Defendants condoned, tolerated, and through actions and inactions ratified such policies and practices. Said defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and practices and to the constitutional rights of Plaintiffs and other individuals similarly situated. Furthermore, the policies, practices, and customs implemented, maintained and tolerated by Defendants were affirmatively linked to and were a significantly influential force behind Plaintiffs' injuries.

73.    Plaintiff brings this claim individually under the Eight and Fourteenth Amendments, in that Defendants denied Plaintiff's rights to be free from cruel and unusual

**16**
**COMPLAINT**
**NICOLE DOE**

punishment and to maintain her bodily integrity unless afforded due process of law. Plaintiff seeks damages for pain and suffering, emotional distress, loss of life and enjoyment of life, and future economic damages. Plaintiffs also seeks attorneys' fees.

## THIRD CAUSE OF ACTION

**Violation of Civil Rights – 42 U.S.C. § 1983 – Inadequate Training/Policy of Inaction**

**(Against Entity Defendants)**

74.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

75.   At all times mentioned herein and prior thereto, the entity Defendants had a duty to train, instruct, supervise, and discipline their subordinates to assure they respected and did not violate the constitutional and statutory rights of inmates, and to objectively investigate violations of detainees' rights, including, but not limited to the right to be safe and protected from injury in Defendants' custody, under the Eighth and Fourteenth Amendments to the U.S. Constitution.

76.   On information and belief, the entity Defendants facilitated, permitted, ratified and condoned similar acts of inmate abuse and were deliberately indifferent to the health and safety of the inmates in general and Plaintiff in particular. The entity Defendants knew, or should have reasonably known, of this practice, pattern or policy of constitutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts, and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so. In particular, the entity Defendants maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

(a)   Failing to adequately train, supervise, and control custodians of CDCR inmates in the proper recognition of sexual assaults by staff and employment of proper safety measures in the CCWF facility;

(b)   Failing to adequately train, supervise, and control custodians of the inmates in properly monitoring, deterring, controlling and responding to sexual assaults by staff in CCWF;

**17**

**COMPLAINT**
**NICOLE DOE**

(c)      Failing to adequately train, supervise, and control custodians of the inmates in relation to monitoring, deterring, reporting and investigating sexual assaults by staff on inmates in the CCWF facility.

77.      As a result of the entity Defendants' acts, Plaintiff sustained the injuries and damages alleged herein, and Plaintiff's rights under the Eighth and Fourteenth Amendments were violated.

78.      By reason of the aforementioned acts and omissions, the entity Defendants have caused Plaintiff to suffer damages.

79.      Plaintiff brings this claim individually under the Eight and Fourteenth Amendments, in that Defendants denied Plaintiffs' rights without due process of law.

80.      Plaintiff seeks damages including pain and suffering, emotional distress, and loss of life and enjoyment of life, and future economic damages under this claim. Plaintiffs also seek attorneys' fees.

## FOURTH CAUSE OF ACTION

### Conspiracy to Violate Civil Rights – 42 U.S.C. § 1983

### (Against All Defendants)

81.      Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

82.      This cause of action arises under United States Code, Title 42, Sections 1983, 1985, and 1988, wherein Plaintiffs seek to redress a deprivation of her rights under color of law of a right, privilege or immunity secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

83.      Defendants:

(a)      had a joint and simultaneous duty to make sure that as an inmate, Plaintiff was physically safe while in Defendants' custody;

(b)      had joint and simultaneous knowledge that Plaintiff was at risk due to the prevalence of sexual assault and lack of proper security procedures to prevent such assaults in the CCWF Facility;

(c)      with such duty, knowledge and a meeting of the minds, took action at the same time and in the same place to collaborate to refuse to protect Plaintiff; and

(d)      after Plaintiff was repeatedly assaulted, took action to obstruct the investigation of the assaults on Plaintiff;

(e)      acted as described herein above, in conspiracy with, and with the agreement permission, ratification, and approval of, each other to violate Plaintiff's civil rights as stated herein.

84.     As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Plaintiff was harmed and suffered severe pain and suffering, emotional distress, loss of enjoyment of life, and future loss of income

85.     Plaintiff brings this claim individually under the Eight and Fourteenth Amendment, in that Defendants denied Plaintiffs' rights without due process of law.

86.     Plaintiff seek damages, including pain and suffering, emotional distress, loss of life and enjoyment of life, and loss of future earnings under this claim. Plaintiffs also seek attorneys' fees.

## FIFTH CAUSE OF ACTION

### Violation of Civil Rights - Cruel and Unusual Punishment – 42 U.S.C. § 1983

### (Against All Defendants)

87.     Plaintiff repeats and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

88.     At all times relevant herein, Defendants were law enforcement agencies and officers and as such acted under color of state law in the course of all of their interactions with Plaintiff, who was in the custody of the CDCR.

89.     Plaintiff is informed and believe and thereon allege that at all times herein mentioned, Defendants, intentionally or with deliberate indifference, inflicted cruel and unusual punishment on Plaintiff by sexually assaulting Plaintiff, or aiding and abetting, condoning, assisting and conspiring to inflict sexual assaults on Plaintiff, or coercing Plaintiff to fail to report her sexual assaults to other law enforcement or government agencies.

90.     Plaintiffs are informed and believe and thereon allege that the acts and/or omissions alleged herein proximately caused the infliction of cruel and unusual punishment on Plaintiff and that Plaintiff was damaged as a result.

91.     By reason of the aforementioned acts of Defendants, Plaintiff experienced severe pain and suffering, emotional distress, loss of enjoyment of life, and future loss of income. Entity Defendants are liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of the many systemic security failures in the CCWF they deliberately failed to remedy the wrong; they have created policies, trainings, and customs under which unconstitutional practices occurred and allowed such policies, trainings, and customs to continue, and they have been grossly negligent and deliberately indifferent in managing subordinates who caused unlawful conditions or events.

92.     At the times when Plaintiff was sexually assaulted in the CCWF, Defendants were aware of the threat of sexual assaults on inmates by CCWF staff. But the State and CDCR nevertheless exhibited deliberate indifference to these lapses; that deliberate indifference legally, proximately, foreseeably and actually caused the violation of Plaintiff's constitutional rights in this case.

93.     Defendants, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the sexual assaults on Plaintiff by CCWF staff. Despite having knowledge as stated above, Entity Defendants condoned, tolerated, and through actions and inactions ratified such policies. Said defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Plaintiff, and other inmates similarly situated.  Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendants were affirmatively linked to and were a significantly influential force behind Plaintiff's injuries.

94.     Plaintiff brings this claim individually under the Eighth and Fourteenth Amendment, in that Defendants denied her constitutional rights without due process of law. Plaintiff seeks damages including pain and suffering, emotional distress, loss of life and enjoyment of life, and loss of future income under this claim. Plaintiff also seek attorneys' fees.

**COMPLAINT**
**NICOLE DOE**

## SIXTH CAUSE OF ACTION

**Violation of Civil Rights – Violation of Bodily Integrity – 42 U.S.C. § 1983**

**(Against All Defendants)**

95.    Plaintiff repeats and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

96.    Plaintiff is informed and believe and thereon allege that at all times herein mentioned, Defendants, intentionally and with deliberate indifference and conscious and reckless disregard to the safety, security and constitutional and rights of Plaintiff, maintained, enforced, tolerated, ratified, permitted, acquiesced in the violation of Plaintiff's bodily integrity by means of sexual assault, without due process of law, in a manner that was wanton and shocks the conscience.

97.    At all times relevant herein, Defendants were law enforcement agencies and officers and as such acted under color of state law in the course of all of their interactions with Plaintiff, who was in the custody of the CDCR.

98.    Plaintiff is informed and believe and thereon allege that at all times herein mentioned, Defendants, intentionally or with deliberate indifference, violated Plaintiff's bodily integrity by sexually assaulting Plaintiff, or aiding and abetting, condoning, assisting and conspiring to inflict sexual assaults on Plaintiff, or coercing Plaintiff to fail to report her sexual assaults to other law enforcement or government agencies.

99.    Plaintiff is informed and believe and thereon allege that the acts and/or omissions alleged herein proximately caused the violation of Plaintiff's bodily integrity and that Plaintiff was damaged as a result. Plaintiff experienced severe pain and suffering, emotional distress, loss of enjoyment of life, and future loss of income

100.    By reason of the aforementioned acts of Defendants, Plaintiff experienced severe pain and suffering, emotional distress, loss of enjoyment of life, and future loss of income. Entity Defendants are liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of the many systemic security failures in the

**COMPLAINT**
**NICOLE DOE**

CCWF they deliberately failed to remedy the wrong; they have created policies, trainings, and customs under which unconstitutional practices occurred and allowed such policies, trainings, and customs to continue, and they have been grossly negligent and deliberately indifferent in managing subordinates who caused unlawful conditions or events.

101.    At the times when Plaintiff was sexually assaulted in the CCWF, Defendants were aware of the threat of sexual assaults on inmates by CCWF staff. But the State and CDCR nevertheless exhibited deliberate indifference to these lapses; that deliberate indifference legally, proximately, foreseeably and actually caused the violation of Plaintiff's constitutional rights in this case.

102.    Defendants, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the sexual assaults on Plaintiff by CCWF staff. Despite having knowledge as stated above, Entity Defendants condoned, tolerated, and through actions and inactions ratified such policies. Said defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Plaintiff, and other inmates similarly situated.  Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendants were affirmatively linked to and were a significantly influential force behind Plaintiff's injuries.

103.    Plaintiff brings this claim individually under the Fourteenth Amendment, in that Defendants violated her constitutional right to bodily integrity without due process of law. Plaintiffs seek damages including for pain and suffering, emotional distress, and loss of enjoyment of life, and loss of future income under this claim. Plaintiffs also seek attorneys' fees.

## SEVENTH CAUSE OF ACTION
**Supervisory Liability**
**(Against All Defendants)**

104.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

COMPLAINT
NICOLE DOE

105.    Supervisory Defendants DOES 1 to 20 were acting under color of state law during all times relevant to this action.

106.    By incarcerating Plaintiff and other female inmates and assuming control over Plaintiff, the Supervisory Defendants engaged in a relationship with Plaintiff that required Defendants to assume and affirmative duty of care in regards in Plaintiff's safety and health.

107.    Supervisory Defendants recklessly and with conscious disregard to known and obvious risks to Plaintiff's safety, failed to protect Plaintiff and other female inmates from pervasive sexual assaults by RODRIGUEZ, SOLORIO, and other CCWF staff by acting or failing to act as follows:

(a)    Continuing to employ RODRIGUEZ, SOLORIO, and other CCWF staff after learning that the CCWF staff members were sexually assaulting Plaintiff and other CCWF inmates.

(b)    Failing to stop CCWF staff from "calling out" inmates and causing them to be transported to isolated locations in the prison where the inmate could be sexually assaulted, despite the fact the prison staff and administration were aware that there was not legitimate reason for the inmates to be transported to those locations.

(c)    Failing to assure that CDCR conducted prompt and competent investigations of allegations of sexual abuse of inmates by CCWF staff.

(d)    Allowing CDCR staff and investigators to intimidate and harass inmates who had been sexually assaulted by CDCR staff by, among other methods, isolating the victim inmates in segregated housing, filing misconduct charges against the victim inmates, and falsely informing other inmates that the victim inmates were suspects in ISU investigations and may be cooperating with ISU.

**COMPLAINT**
**NICOLE DOE**

(e)     Failing to properly train, assign, supervise and guide correctional staff to ensure the safety of female inmates at CCWF and to protect them from sexual assault by correctional officers.

(f)     Failing to maintain surveillance systems and restrictions on inmate movements inside CCWF sufficient to assure that staff could not isolate inmates in areas where the inmates could be sexually assaulted.

(g)     Maintaining customs and practices that informed CCWF staff that they were free to sexually harass, sexually assault, and intimidate inmates without fear of consequences.

108.   Supervisory defendants knew that RODRIGUEZ, SOLORIO and other correctional CCWF staff were engaging in these acts and knew the conduct would deprive Plaintiff and other inmates at CCWF of their rights. Supervisory Defendants' actions were recklessly indifferent and shocked the conscience.

As a direct and proximate result of Supervisory Defendants' interference with Plaintiff's constitutional and statutory rights, Plaintiff was harmed. Plaintiff experienced severe pain and suffering, emotional distress, loss of enjoyment of life, and future loss of income and future medical expenses.

## EIGHTH CAUSE OF ACTION
### Bane Civil Rights Act - Cal. Civil Code 52.1
### (Against All Defendants)

109.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

110.   At all relevant times, Plaintiff was an inmate confined in CDCR.

111.   While Plaintiff was confined to the CDCR, Defendants intentionally interfered with Plaintiff's constitutional and statutory rights, through threats, intimidation or coercion, by

COMPLAINT
NICOLE DOE

perpetrating, conspiring to perpetrate, and aiding and abetting sexual assaults on Plaintiff by CDCR staff. Defendants further interfered with Plaintiff's constitutional right by silencing her by intimating, threatening or coercing her by, among other acts, placing her in segregated housing, informing other inmates that Plaintiff was subject to an ISU investigation, and indicating to Plaintiff that she would be subject to discipline if she revealed her victimization at the hands of CDCR staff.

112.    By their acts, Defendants interfered with Plaintiff's rights under the Eight and Fourteenth Amendments to the United States Constitution, Article I, sections 15 and 17 of the California Constitution, 34 U.S.C. section 3301 et seq., and California Code of Regulations, Title 15, section 3401.5 et seq.

113.    When they caused the sexual assaults on Plaintiff and coerced her into not reporting the assaults, Defendants were specifically aware that such assaults violated Plaintiff's constitutional and statutory rights and intentionally or recklessly disregarded Plaintiff's right to remain free from sexual assault at the hands of CDCR employees. The wanton and malicious nature of the violations of Plaintiff's constitutional and statutory rights establishes intent and reckless disregard of Plaintiff's rights while he was imprisoned and in the custody of the CDCR.

114.    As a direct and proximate result of Defendants' interference with Plaintiff's constitutional and statutory rights, Plaintiff was harmed. Plaintiff experienced severe pain and suffering, emotional distress, loss of enjoyment of life, and future loss of income. Entity Defendants are liable for the damages suffered by Plaintiff as a result of the conduct of their employees in that, after learning of the many systemic security failures and sexual assaults in the CCWF they deliberately failed to remedy the violations of inmates' rights.

115.    Defendants and employees of the Entity Defendants, and within the course and scope of such agency, service, and/or employment, and under color of authority, were negligent in relation to Plaintiff's health, safety and welfare, and breached their duty of care by not acting reasonably under the circumstances of such risk, as described herein /or by failing to discharge their duties.  Each of these Defendants' breaches of duty were proximate and actual causes of injury to Plaintiff.

**<u>NINTH CAUSE OF ACTION</u>**

**Ralph Act – Cal. Civil Code 51.7**

**(Against All Defendants)**

116.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

117.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, Defendants, intentionally or with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff, inflicted, permitted, or acquiesced in the infliction of violence or threat of violence on Plaintiff in the form of sexual assault.

118.    When Defendants inflicted, permitted, or acquiesced in the infliction of violence or threat of violence on Plaintiff, in the form of sexual assault, Defendants committed those acts with a discriminatory motive.

119.    Defendants' targeted Plaintiff for sexual assault because of Plaintiff's sex and sexual orientation.

120.    By reason of the aforementioned acts of Defendants, Plaintiff experienced severe pain and suffering, emotional distress, loss of enjoyment of life, and future loss of income. Entity Defendants are liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of the many systemic security failures in the CCWF they deliberately failed to remedy the wrong; they have created policies, trainings, and customs under which unconstitutional practices occurred and allowed such policies, trainings, and customs to continue, and they have been grossly negligent and deliberately indifferent in managing subordinates who caused unlawful conditions or events.

**COMPLAINT**
**NICOLE DOE**

**TENTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Against All Defendants)**

121. Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

122. Defendants had a duty to act reasonably to avoid, or foresee the risk that Plaintiff was at risk of physical harm and a duty to prevent harm to Plaintiff as an inmate in Defendants' custody.

123. Defendants, agents, servants, and/or employees of the Entity Defendants, and within the course and scope of such agency, service, and/or employment, and under color of authority, acted outrageously and with reckless disregard to the probability that Plaintiff would suffer emotional distress. Further, Defendants acted outrageously and recklessly in relation to Plaintiff's mental health, safety and welfare. Defendants breached their duty of care with their reckless and outrageous behavior, especially given the risks, as described herein. In so doing, Defendants breached their duty of care by not acting reasonable under the circumstances of such risk and/or by failing to discharge their duties. Each of these Defendants' breaches of duty were proximate and actual causes of injury to Plaintiff.

124. At all times herein mentioned, Defendants were so outrageous and reckless in relation to Plaintiff that as a direct and proximate result thereof Plaintiff was caused to and did suffer severe emotional distress as a direct result of being sexually assaulted and denied mental health treatment. Defendants' conduct was a substantial factor in causing Plaintiff's emotional distress.

125. Said conduct on the part of the Defendants would have caused a reasonable person to suffer severe emotional and physical distress.

126. As a direct and proximate result of the aforementioned acts by Defendants, Plaintiff has been and continue to be generally and specially damaged in an amount according to proof.

COMPLAINT

NICOLE DOE

## ELEVENTH CAUSE OF ACTION

### Negligence – California Common Law

### (Against All Defendants)

127.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs hereof as though fully set forth herein.

128.    Defendants had a duty to act reasonably to avoid, or foresee the risk that Plaintiff was at risk of being sexually assaulted by CCWF staff and a duty to prevent harm to Plaintiff as an inmate in Defendants' custody.

129.    Defendants, agents, servants, and/or employees of the Entity Defendants, and within the course and scope of such agency, service, and/or employment, and under color of authority, acted outrageously and with reckless disregard to the probability that Plaintiff would be sexually assaulted. Further, Defendants acted outrageously and recklessly in relation to Plaintiff's mental health, safety and welfare.  Defendants breached their duty of care with their reckless and outrageous behavior, especially given the risks, as described herein. In so doing, Defendants breached their duty of care by not acting reasonable under the circumstances of such risk and/or by failing to discharge their duties.  Each of these Defendants' breaches of duty were proximate and actual causes of injury to Plaintiff.

130.    At all times herein mentioned, Defendants were so outrageous and reckless in relation to Plaintiff that as a direct and proximate result thereof Plaintiff being sexually assaulted and denied mental health treatment. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

131.    Defendants failed in their duty to safeguard Plaintiff's safety and health by acting or failing to act as follows:

(a)    Allowing RODRIGUEZ and SOLORIO to sexually assault and harass Plaintiff.

**28**

**COMPLAINT**
**NICOLE DOE**

(b)     Allowing RODRIGUEZ, SOLORIO and other CCWF staff to transport, and thereby isolate, Plaintiff and other inmates to areas of CCWF facility where there was no video surveillance and where the inmates had no legitimate purpose.

(c)     Failing to properly investigate allegations by both inmates and CCWF staff that RODRIGUEZ, SOLORIO and other CCWF staff were sexually assaulting inmates.

As a direct and proximate result of the aforementioned acts by Defendants, Plaintiff has been and continues to be generally and specially damaged in an amount according to proof.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief as follows against Defendants:

1.     General and special damages, in an amount according to proof;

2.     Exemplary and punitive damages against each individual, supervisory and Doe defendant, in amounts according to proof;

3.     Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

4.     Such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury for all issues so triable.


DATED:  November 12, 2024.          GLENN AGRE BERGMAN & FUENTES LLP


By: /s/ *Lyn R. Agre*
   Lyn R. Agre (Cal. Bar No. 178218)
   580 California St., Suite 1420
   San Francisco, CA 94104
   Telephone: (415) 599-0880
   lagre@glennagre.com


*Attorneys for Plaintiff*

COMPLAINT
NICOLE DOE